UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY A. LAVIGNE,

    Plaintiff,

                                       CASE NO. 1:11-cv-237

v.

                                       HON. ROBERT HOLMES BELL

CITY OF NORTON SHORES,
a municipal corporation, and
CITY OF NORTON SHORES
MAYOR, GARY NELUND,

    Defendants.
_____/

## **O P I N I O N**

This matter is before the court on the parties' January 3, 2012, cross motions for summary judgment. For the reasons that follow, Plaintiff's motion for summary judgment (Dkt. No. 22) will be denied, and Defendants' motion (Dkt. No. 17) will be granted.

**I.**

Plaintiff Timothy A. LaVigne was a Lieutenant in the City of Norton Shores Police Department. His duties involved the supervision of subordinate officers. As a commanding officer, LaVigne was not a member of a collective bargaining unit.

Between July and September of 2010, Plaintiff used his city cellular phone to send and receive a total of 451 text messages with Linda Nanna, the wife of a subordinate officer. It is undisputed that the some of these text messages were sexual or flirtatious in nature.

1

Plaintiff maintains that no physical relationship developed between himself and Mrs. Nanna.

Upon discovery of the extensive texting, Officer Tony Nanna presented phone records to Police Chief Shaw. Chief Shaw conducted an investigation on the texting. A determination hearing was held, after which Chief Shaw notified Plaintiff that his conduct had violated the department's code of ethics and alerting him to the possibility that he might be suspended, demoted, or terminated. On October 28, again citing the department code of ethics and related regulations, a letter from the Director of Administrative Services and approved by the City Administrator terminated Plaintiff effective immediately. The letter also informed Plaintiff of the procedure for appealing the decision as follows:

> Pursuant to the City's Code of Ordinances (Sec. 2.520), be advised you may appeal this decision by submitting your written grievance as follows:
> (1)     *First step*. Employee's immediate supervisor;
> (2)     *Second step*. Employee's department head;
> (3)     *Third step*. The personnel director;
> (4)     *Fourth step*. The city administrator; and
> (5)     *Fifth step*. The Personnel Board in cases of suspension, demotion or discharge.

(Dkt. No. 24, Ex. 9).

After receiving the termination letter, Plaintiff employed counsel and sent a written request for reconsideration to the City Administrator. The City Administrator declined to alter his decision, sending Plaintiff's counsel an explanatory letter:

> At our meeting you suggested that Mr. LaVigne would accept a demotion as an alternative form of discipline. There are no vacant positions of lower rank and the budget is inadequate to fund an additional position. Regardless, this alternative would not be in the best interest of the department.

2

> In summary, after thoughtful consideration of the appeal and reflecting upon my original decision to terminate Mr. LaVigne's employment, after considering the facts involved and in the best interest of the Police Department, I must deny the request to reinstate Mr. LaVigne. Mr. LaVigne may avail himself to the final step in the appeals process which involves the Personnel Board. Pursuant to Section 5.17, B of the City Charter, the Personnel Board may make a recommendation to the City Administrator or Mayor. As this appeal involves removal, the Mayor shall have the right and power to modify such disciplinary action by the City Administrator considering the recommendation of the Personnel Board.

(Dkt. No. 18, Ex. 6.) Plaintiff then proceeded to appeal the decision before the Personnel Board. The Personnel Board had never before convened to hear an employee's grievance or otherwise make disciplinary recommendations. (Dkt. No. 8 at 8.)

The three member Personnel Board considered the investigation report prepared by Chief Shaw as well as an appeal brief submitted by Plaintiff. The panel ultimately reached the conclusion that, although Plaintiff had seriously violated the trust of other officers, termination was an excessive punishment, and recommended that Plaintiff be reinstated without pay reimbursement and at a lower, non-supervisory position. (*Id.* at 8-9; Dkt. No. 24 at 8.)

The Personnel Board's recommendations were sent to Defendant Mayor Gary Nelund, who scheduled a meeting with the board to discuss the findings. (Dkt. No. 18 at 10.) After conferring with the Personnel Board, City Ordinances related to personnel, and the City Charter, Mayor Nelund decided to uphold the City Administrator's decision to terminate Plaintiff. Regarding his decision not to follow the Personnel Board's recommendation to reinstate Plaintiff at a lower, non-supervisory position, Mayor Nelund stated "the idea was

3

to fill [Mr. LaVigne's supervisory] position . . . [the City] didn't have the ability to fill that position plus create a new non-supervisory position." (*Id.* at 18; Nelund Dep. at 57.)

Plaintiff filed this action alleging that Defendants City of Norton Shores and Mayor Gary Nelund violated his due process rights by failing to abide by the recommendation of the Personnel Board (Count I). He also alleges breach of contract based on his expectation that Defendants would abide by the Personnel Board's decision, and that he would not be terminated without just cause (Count II). Plaintiff also alleges a promissory estoppel claim based on his reliance of the city ordinance establishing appeal procedure.

## II.

### A. Due Process

Plaintiff alleges that his due process rights were violated when Defendant Mayor Nelund chose not follow the recommendation of the Personnel Board to "reinstate" Plaintiff at a lower, non-supervisory position, opting instead to affirm the City Administrator's decision to terminate Plaintiff. For support, Plaintiff points to Code of Ordinances Section 2-520, which lists the Personnel Board as the fifth and final step in appealing an employment decision in cases of suspension, demotion, or discharge.

Read in isolation, the plain meaning of Section 2-520 would indeed indicate that the Personnel Board holds the last word on terminations of employment. However, the ordinance must be read in conjunction with Section 5.17 of the City Charter, which only authorizes the board to make recommendations to the Mayor:

4

>Section 5.17. The Personnel Board shall have the power and be required to:
>
>A. Advise the City Administrator on problems concerning personnel administration.
>
>B. Hear appeals of any employee who has been suspended, reduced or removed from city employment and shall transit to the City Administrator and the Mayor, its findings and make such recommendations as it deems necessary. In the event the suspension, reduction or removal has been caused by an order made by the City Administrator or approved by him, the Mayor shall have the right and power to modify such disciplinary action based upon the recommendation of the Personnel Board. In other cases the City Administrator shall have the power to modify the disciplinary action taken.

Taking the City Ordinances and Charter together, it becomes clear that the Personnel Board's function is advisory. In other words, the final appeal of an employment is made to the Personnel Board, but the Board's role is then to prepare a recommendation for the Mayor, who has the authority to make a final decision. Under this reading, the City Ordinances and the City Charter do not conflict.

Plaintiff argues that the Charter supports his position, as it only empowers the Mayor to modify disciplinary action "based upon the recommendation of the Personnel Board." However, the Charter clearly vests the "right and power to modify such disciplinary actions" in the mayor, not the Personnel Board. Although the Mayor is directed to make decisions "based upon the recommendation" of the board, if the Mayor were *required* to follow the board's findings, then those findings would not be "recommendations," and it would make little sense for the charter to empower the Mayor rather the than directly grant power to the board.

5

This interpretation is supported by the behavior of the Personnel Board, which understood its own role to be advisory. After hearing Plaintiff's appeal, the board submitted its findings and recommendations to the Mayor in a memo titled "Summary & Recommendation," inviting the Mayor to consider its findings and convene the board to discuss the matter further. (Dkt. No. 19-2, Ex. 7.) The Personnel Board did not attempt to overrule the City Administrator's decision to terminate Plaintiff under its own authority. The Personnel Board, the Mayor, and the City Administrator all behaved and communicated with the understanding that final employment decisions concerning employment rest with the Mayor.

Because the Court finds that the procedures for employment appeals laid out in the City of Norton Shores Ordinances and Charter were followed, Plaintiff's due process claim must fail.

**B. Breach of Contract**

Plaintiff claims that Defendants breached a "promise of continued employment" by failing to follow the recommendation of the Personnel Board and terminating him "absent just-cause." (Dkt. No. 7 at ¶ 36.) Any claim based on an Defendants' alleged failure to follow city procedure must fail for the reasons stated above. Plaintiff's breach of contract claim also fails to the extent that it alleges improper termination absent "just-cause."

Plaintiff did not receive explicit oral or written promises of continued employment. Thus, Defendants argue that Plaintiff is an "at will" employee. However, even assuming for

the purposes of these motions that Plaintiff had a legitimate expectation of just cause employment, it is clear that the City Administrator had authority to terminate Plaintiff in this case. It is undisputed that Plaintiff did in fact engage in inappropriate texting with a subordinate's wife. Although the Personnel Board recommended that Plaintiff be demoted rather than terminated, it confirmed that Plaintiff had violated the trust of his fellow officers and violated the department's code of ethics. Thus, even under a "for cause" analysis, there is no material dispute that inappropriate behavior occurred and that cause existed to justify the termination.

**C. Promissory Estoppel**

Plaintiff also alleges a third count under a theory of promissory estoppel. Plaintiff argues that Defendants in effect "promised" to abide by the five-step grievance process contained in the city ordinance, and that Plaintiff relied upon that promise by appealing to the Personnel Board for a final decision.

First, this count must fail because Michigan law limits application of the doctrine of promissory estoppel to situations where a contract is not formed, and plaintiff otherwise relies on an actual and definite promise. *Marrero v. McDonnell Douglas Capital Corp.*, 200 Mich. App. 366 (1994). Here, Plaintiff had a contractual employment relationship with Defendants.

Second, it is clear from the record that the City Administrator informed Plaintiff prior to his appeal before the Personnel Board that the Mayor would have final say regarding

7

Plaintiffs employment. (Dkt. No. 18, Ex. 6.) Thus, Plaintiff cannot claim that he reasonably relied on any promise that the Personnel Board's recommendation would constitute a final decision.

Finally, Defendants are immune from tort liability as government actors engaged in the exercise or discharge of a governmental function. Michigan's Governmental Immunity Act, M.C.L. 691.1407.

### III. CONCLUSION

Having determined that Defendant Mayor Gary Nelund had the final authority to decide Plaintiff's appeal under the City of Norton Shores City Ordinances and Charter, Defendants are entitled to summary judgment on Plaintiff's due process claim. Additionally, the Court finds that summary judgment is warranted in Defendants' favor on Plaintiff's breach of contract and promissory estoppel claims. An order and judgment consistent with this opinion will be entered.


Dated: February 24, 2012                     /s/ Robert Holmes Bell
                                             ROBERT HOLMES BELL
                                             UNITED STATES DISTRICT JUDGE